1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

ASHLEY MORRILL,                                    NO.  C11-1986-RAJ-JPD

9
                           Plaintiff,

10
         v.                                        REPORT AND
                                                   RECOMMENDATION
11
MICHAEL J. ASTRUE, Commissioner of
Social Security,

12
                           Defendant.

13

14        Plaintiff Ashley Morrill appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her application for Supplemental

16   Security Income ("SSI") under Title II of the Social Security Act, 42 U.S.C. §§ 1381-83f, after

17   a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the

18   Court recommends that the Commissioner's decision be REVERSED and REMANDED for

19   further administrative proceedings.

20                        I.        FACTS AND PROCEDURAL HISTORY

21        At the time of the administrative hearing, plaintiff was a twenty-year-old woman with a

22   high school education.  Administrative Record ("AR") at 49.  Plaintiff had also completed a

23   few classes at Everett Community College.  AR at 50.  Although plaintiff has worked part-time

24

REPORT AND RECOMMENDATION - 1

1    as a barista and office cleaner, she has no past relevant work within the meaning of the Social

2    Security regulations.  AR at 51-52, 54, 73.

3           Plaintiff filed a claim for SSI payments on April 18, 2008, her alleged onset date.  AR at

4    48.  Plaintiff asserts that she is disabled due to "autism, ADD, ADHD, sensory integration,

5    Asperger's and auditory processing disorder."  AR at 91.

6           The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 91-

7    94, 98-102.  Plaintiff requested a hearing which took place on February 2, 2010.  AR at 46.

8    On March 25, 2010, the ALJ issued a decision finding plaintiff not disabled and denied

9    benefits based on his finding that plaintiff could perform a specific job existing in significant

10   numbers in the national economy.  AR at 39.  After reviewing additional evidence, the Appeals

11   Council denied plaintiff's request for review.  AR at 1-4.  On December 5, 2011, plaintiff

12   timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.      JURISDICTION

14          Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

15   405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

17          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

18   social security benefits when the ALJ's findings are based on legal error or not supported by

19   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

20   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

21   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

22   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

23   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

24   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Morrill bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On March 25, 2010, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since April 18, 2008, the application date.

2.    The claimant has the following severe impairments: hearing impairment; and Asperger's disorder with attention deficit, sensory integration and/or autism/autistic disorder.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to work in an environment that has minimal noise, that is, a quiet work setting such as a library with no loud machinery or background noise and where it is not necessary to communicate frequently with coworkers or supervisors.  The claimant has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work including understanding, remembering and carrying out simple two to three step instructions; she has average ability to perform sustained work activities, that is, she can maintain attention and concentration, persistence and pace in an ordinary work setting on a regular and continuing basis for 8 hours a day, 5 days a week, or an equivalent work schedule within customary tolerances of employers rules regarding sick leave and absence; and she can make judgments on simple work-related decisions, respond appropriately to a supervisor, a few coworkers, and deal with changes all within a stable work environment.  The claimant is not capable of dealing with the general public as in a sales position

or where the general public is frequently encountered as a essential element of the work process; however, incidental contact with the general public is not precluded.

5. The claimant has no past relevant work.

6. The claimant was born on XXXXX, 1989 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2008, the date the application was filed.

AR at 30-39.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the opinion of consultative examiner Rodger Meinz, Ph.D.?

2. Did the ALJ err in evaluating plaintiff's testimony?

3. Did the ALJ err in evaluating the lay witness testimony of plaintiff's mother, Debbie Cornell?

4. Did the ALJ err at step five?

Dkt. 14 at 1-2.[3]

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.
[3]  Although the plaintiff also lists "whether the ALJ properly considered the opinions of the State Agency Medical Consultant" as an issue in the beginning of her opening brief, she presents no further argument on the subject.  In her reply brief, plaintiff admits that she "has waived the argument regarding the ALJ's consideation of the medical consultant's opinion."  Dkt. 16 at 2.

REPORT AND RECOMMENDATION - 6

VII.    DISCUSSION

A.    The ALJ Did Not Err in Evaluating Dr. Meinz's Opinion

1.    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.*  An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record.

*Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

> 2.   *The ALJ Provided Specific and Legitimate Reasons for Rejecting Dr. Meinz's Opinion That Plaintiff Cannot Work*

Consultative examining psychologist Dr. Meinz examined plaintiff and also spoke with her mother in July 2008. AR at 269-74. Dr. Meinz diagnosed plaintiff with Asperger's disorder, with a GAF of 49.[4] AR at 274. He noted that plaintiff's daily activities included preparing simple meals like peanut butter and jelly sandwiches, bathing every other day, playing games on the computer, sewing, drawing, and making small figurines out of clay. AR

---

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

REPORT AND RECOMMENDATION - 8

at 271-72.  With respect to plaintiff's social activities, plaintiff told Dr. Meinz that she rarely goes anywhere although "sometimes she will go to the movies with friends . . . she can be in a movie and tolerate the noise as long as she is focusing just on the movie.  If there are people around making noise, however, she has problems."  AR at 271.  He noted that plaintiff would "likely have greater difficulties focusing in a situation where there was a lot of ambient noise, or where she wasn't held on task."  AR at 274.  Dr. Meinz also found that plaintiff's social awareness was "quite blunted and she prefers to spend time alone where she can be in charge of her routine and situation," and that she can become very "discombobulated if she was not provided ample lead time for on new events, appointments, and the like."  AR at 274.

Plaintiff "had no difficulties focusing on the items at hand" and "was never hyperactive" during Dr. Meinz's testing.  AR at 273.  In fact, plaintiff "exchanged some lighthearted banter when some of the testing was conducted, and she smiled frequently throughout the session."  AR at 272.  She earned a full scale IQ score of 103, and therefore her "general level of intellectual functioning was found to be operating within the Average range, at the 58th percentile."  AR at 273.  Dr. Meinz concluded that "[c]ognitively, Ms. Morrill is quite intact.  She has a number of significant skills.  Her memory functioning is well intact."  AR at 274.  Dr. Meinz observed that plaintiff was "a little slow" with tasks and preferred to move at a "very slow, methodical rate," resulting in "lower scores on the Digit Symbol and Trails A and B tests than would have been the case had she not been so careful."  AR at 274.  Specifically, plaintiff scored in the 10th to 20th percentile on Trails A and the 25th to 50th on Trails B.  AR at 273.  Dr. Meinz observed that plaintiff "certainly works at her own speed, and this, again, I believe is part and parcel of the Asperger's Disorder."  AR at 274.  Based upon his testing and examination of plaintiff, Dr. Meinz concluded that although plaintiff was

stabilized in her home, "the greater likelihood is that if she were required to go to work, she would destabilize and require psychiatric assistance." AR at 274.

The ALJ briefly explained how Dr. Meinz's opinion related to the medical evidence in the record as a whole. Specifically, the ALJ opined that "the medical evidence concerning [the plaintiff's] symptoms from Asperger's disorder with attention deficit, sensory integration and/or autism disorder shows essentially benign findings in terms of cognitive functioning." AR at 34-35. The ALJ then quoted Dr. Meinz's finding that "although the claimant would have difficulties focusing in settings where there is a lot of ambient noise, she is 'quite intact' cognitively, and her memory functioning is 'well intact.'" AR at 35. In further support of this opinion, the ALJ cited to 2009 treatment notes from psychiatrist Katerina Riabova which "indicate that the claimant has a fairly high functional mental state," as well as the state psychological consultants' opinions that "although the claimant's mental disorders would cause her to be easily distracted by others, she has the ability to perform complex, routine tasks in a quiet setting, understand and follow instructions, and has sufficient judgment and insight for entry level work." AR at 35. The ALJ then afforded Dr. Meinz's opinion "some weight," and adopted Dr. Meinz's finding that plaintiff is "'quite intact' cognitively, has 'a number of significant skills,' and her memory functioning is 'well intact.'" AR at 36. However, the ALJ found Dr. Meinz's opinion that plaintiff's mental conditions precluded her from all work to be "inconsistent with the overall medical record and other medical opinions which indicate that the claimant is capable of performing simple, unskilled work in a quiet environment with only incidental contact with the public." AR at 36.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Meinz's opinion regarding plaintiff's ability to work. Dkt. 14 at 13. Specifically, plaintiff argues that the ALJ's finding that Dr. Meinz's opinion that plaintiff was precluded

1  from all work was "inconsistent with the overall medical record and other opinions" was "not a

2  specific and legitimate reason supported by substantial evidence for rejecting Dr. Meinz's

3  opinions.  The ALJ points to no specific evidence in the record which is inconsistent with Dr.

4  Meinz's findings."  *Id.*

5        As discussed above, however, the ALJ did identify specific evidence in the record that

6  was inconsistent with Dr. Meinz's finding that plaintiff's mental impairments were so severe as

7  to preclude her from participating in all work activity.  The ALJ pointed to the 2009 treatment

8  notes from treating psychiatrist Dr. Riabova, which indicated "that the claimant has a fairly

9  high functional mental state."  AR at 35.  Specifically, the ALJ cited to Dr. Riabova's notes

10  providing that plaintiff's medications were working "great," her sleeping problems had

11  disappeared, she was visiting a tanning salon to get more sun, attending Everett community

12  college, scored "above normal" on a hearing test, and reported feeling "definitely better" and

13  "not depressed.  AR at 35 (citing AR at 309-20).  Dr. Riabova's notes also observed that

14  plaintiff generally "does well, gets into drawing, art and music," and demonstrated a "mood

15  euthymic . . . full range of affect" and normal speech.  AR at 35 (citing AR at 309-20).

16        In addition, the ALJ relied upon the opinions of the state psychological consultants who

17  concluded that although plaintiff's mental disorders "would cause her to be easily distracted by

18  others, she has the ability to perform complex, routine tasks in a quiet setting, understand and

19  follow instructions, and has sufficient judgment and insight for entry level work."  AR at 35.

20  Although an ALJ should generally give less weight to the conclusion of a non-examining

21  expert than the conclusion of an examining physician, a non-examining medical expert's

22  opinion may constitute substantial evidence when it is consistent with other independent

23  evidence in the record.  *See Tonaypetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

24  Substantial evidence that can support the conflicting opinion of a nonexamining medical

REPORT AND RECOMMENDATION - 11

advisor can include laboratory test results, contrary reports from examining physicians, and inconsistent testimony from the plaintiff.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989).  As argued by the Commissioner, the state agency medical consultants' opinions were consistent with Dr. Riabova's treatment notes as well as plaintiff's testimony concerning her relatively broad range of daily activities, which included housework, preparing meals, attending college classes, part-time cleaning work, using computers, engaging in crafts, and socializing with her family.  AR at 35.  Thus, the ALJ properly provided specific and legitimate reasons for rejecting Dr. Meinz's opinion that plaintiff's mental impairments precluded her from working.

      B.     <u>The ALJ Did Not Err in Evaluating Plaintiff's Testimony</u>

      *1.*    *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

> 2.  *The ALJ Provided Clear and Convincing Reasons for Finding that Plaintiff's Impairments Were Not As Severe As She Alleged*

The ALJ found that although plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 34. Specifically, the ALJ found plaintiff less than credible because (1) she engaged in a range of activities that were inconsistent with her allegations of disabling impairments, and (2) the objective medical evidence did not support her allegations that her mental disorders limited her from working entirely. Dkt. 15 at 5-7.

The ALJ noted that "[a]lthough the claimant has reported significantly limited activities in her testimony at the hearing, her allegations of disabling impairments are not consistent with her actual range of activities. In her Function Report, the claimant reported a wider range of activities including the following: attending to all of her own personal care; preparing meals; performing housekeeping; shopping in stores; engaging in hobbies such as computers, drawing, art, polymer clay, and sewing; and social activities such as attending college classes

REPORT AND RECOMMENDATION - 13

1    and interacting with others on the computer." AR at 34. The ALJ noted that plaintiff told Dr.

2    Meinz that she could drive, and that she can tolerate the noise at a movie "as long as she is

3    focusing on just the movie." AR at 34. Furthermore, the ALJ pointed to the fact that plaintiff

4    was currently working part-time on the weekends cleaning offices, and found that "[a]lthough

5    the claimant testified that her mental symptoms have interfered with her ability to perform job

6    duties, this work activity does indicate that the claimant's daily activities have, at least at times,

7    been somewhat greater than the claimant has generally alleged. The fact that the claimant's

8    impairments have not prevented her from doing this work strongly suggests that it would not

9    prevent her from continuing to engage in other limited work activity." AR at 34. The ALJ

10   concluded that plaintiff's activities show that plaintiff is capable of performing unskilled work

11   in a quiet environment. AR at 34.

12          Finally, the ALJ found that "the objective medical evidence does not support the

13   claimant's allegations that her mental disorders limit her from working entirely." AR at 34.

14   As discussed above, the ALJ relied upon Dr. Meinz's findings that plaintiff is cognitively

15   intact and her memory functioning is "well intact," and referenced numerous treatment notes of

16   Dr. Riabova, which the ALJ found "indicate[d] that the claimant has a fairly high functional

17   mental status." AR at 35. The ALJ also afforded "significant weight" to the opinions of the

18   state psychological consultants, who opined that plaintiff could perform complex, routine tasks

19   in a quiet setting, understand and follow instructions, and has sufficient judgment and insight

20   for entry level work. AR at 35.

21          Plaintiff contends that the ALJ failed to provide clear and convincing reasons for

22   finding the plaintiff less than credible. Specifically, plaintiff contends that her daily activities,

23   including her ability to work for one to two hours on the weekend, do not show that she was

24   able to engage in a wider range of activities than alleged. With respect to the ALJ's findings

REPORT AND RECOMMENDATION - 14

1   concerning the objective medical evidence in the record, plaintiff asserts that the ALJ erred by

2   relying upon Dr. Riabova's treatment notes because "Dr. Riabova's notes contain so little

3   detail that it is not reasonable to say that they provide an accurate representation of Plaintiff's

4   functioning." Dkt. 14 at 13-18.  Plaintiff asserts that the Court should rely upon Dr. Meinz's

5   evaluation, which is more detailed.  *See id*. at 18-19.  The Commissioner responds that the ALJ

6   met his burden of providing clear and convincing reasons for rejecting plaintiff's testimony.

7          Plaintiff's daily activities constitute a clear and convincing reason for the ALJ to

8   challenge plaintiff's credibility, and the ALJ's conclusion was amply supported by the record

9   in this case.  *See Reddick*, 157 F.3d at 722.  The ALJ could reasonably find that plaintiff's

10  broad range of activities, including her part-time job, suggested that her abilities were greater

11  than she alleged during her hearing.  In addition, inconsistencies with objective medical

12  evidence provide a basis for an adverse credibility determination.  *Rollins v. Massanari,* 261

13  F.3d 853, 857 (9th Cir.2001).  The medical evidence of record generally reveals mild

14  impairments in this case, as found by the ALJ.

15         As noted at the outset, credibility determinations are particularly within the province of

16  the ALJ.  The ALJ also properly supported his finding with a detailed examination of the

17  record.   Accordingly, the ALJ did not err when he found plaintiff's testimony about her

18  functional limitations and the severity of her impairments to be less than fully credible.

19         C.     The ALJ Did Not Err in Evaluating Ms. Cornell's Lay Witness Testimony

20         Plaintiff's mother, Debbie Cornell, completed a Third Party Function Report and

21  testified at the administrative hearing.  AR at 66-72; 183-90.  The ALJ noted that Ms. Cornell

22  "reiterated many of the claimant's allegations concerning the claimant's symptoms of panic

23  attacks, anxiety, auditory sensory disorder and sensory integration, fear of crowds and social

24  phobia, and problems with memory, concentration, understanding, and completing tasks."  AR at

REPORT AND RECOMMENDATION - 15

37, 66-72, 183-90.  For example, the ALJ noted that "Ms. Cornell testified that plaintiff has a weekend cleaning job but does not complete tasks consistently, has an erratic sleep pattern, and forgets to take medications because she does not like side effects . . . Ms Cornell further stated that the claimant 'forgets things' such as eating or going to the store to buy food; she cannot follow an 'itinerary of activities' and would 'be on the street if she was on her own.'"  AR at 37.  The ALJ considered Ms. Cornell's testimony and found that it supports the ALJ's finding that plaintiff has some limitations, but "these statements generally reflect the same allegations made by the claimant that she is completely disabled from all work, allegations that are not entirely credible for the reasons discussed above."  AR at 37.

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Dodrill*, 12 F.3d at 919.

Plaintiff contends that the ALJ did not provide specific and germane reasons for rejecting the opinions of the plaintiff's mother, Debbie Cornell.  Dkt. 14 at 19-20.  Specifically, plaintiff argues that "the ALJ's reasons for rejecting Plaintiff's testimony are not clear and convincing.  If the Court has determined that this case should be remanded for further consideration of Plaintiff's testimony, it should also remand for further consideration of Plaintiff's mother's testimony."  *Id*. at 20.

REPORT AND RECOMMENDATION - 16

The Commissioner responds that the Ninth Circuit has held "that where the lay witness testimony described the same limitations as the claimant's testimony, the ALJ's reasons for rejecting a claimant's testimony apply with equal force to the lay testimony, even where the ALJ failed to explain her reasons for rejecting the lay witnesses' testimony." Dkt. 15 at 9 (citing *Molina v. Astrue*, 2012 WL 1071637, *13 (9th Cir. 2012)) ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [the plaintiff's] testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.").

As discussed above, the ALJ provided clear and convincing reasons for finding the plaintiff less than credible.   Because Ms. Cornell's testimony regarding the severity of plaintiff's limitations mirrored that of her daughter, who the ALJ properly found less than credible, the ALJ did not err by finding Ms. Cornell's testimony "not entirely credible" for the same reasons.  AR at 37.  The ALJ did not need to reiterate his reasoning in order to provide germane reasons for rejecting the lay witness testimony.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the plaintiff's own subjective complaints], and because [the plaintiff's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

D.   The ALJ Erred by Finding that Plaintiff Could Perform the Jobs of Housekeeper/Cleaner and Stubber

1.   *Housekeeper/Cleaner*

Plaintiff contends that the ALJ erred by failing to resolve a conflict between testimony of the vocational expert  ("VE") during the administrative hearing and the description of the job of housekeeper/cleaner set forth in the Dictionary of Occupational Titles ("DOT"), which

1    the ALJ was required to do before relying upon this occupation at step five.  Dkt. 14 at 22

2    (citing SSR 00-4p).  Specifically, plaintiff asserts that contrary to the ALJ's finding that

3    plaintiff's impairments limited her to a quiet work setting with minimal background noise

4    where it is not necessary to communicate frequently with coworkers or supervisors, the DOT

5    indicates that the occupation of cleaner/housekeeping involves a noise level of "Level 3 –

6    Moderate."  *See id*.  Plaintiff contends that she is not able to perform this job because of the

7    moderate noise level, and the ALJ erred by citing this job without providing an explanation

8    for his deviation from the DOT.  *See id.*

9         The Commissioner responds that the VE testified that cleaner/housekeeper was a

10   category of jobs that included jobs like plaintiff's part-time employment cleaning office

11   buildings, as well as hotel/motel housekeeping.  Dkt. 15 at 13.  Moreover, the Commissioner

12   points out that the ALJ did ask the VE about the noise level of these jobs during the hearing,

13   and the VE agreed that these jobs were fairly quiet.  *See id*. (citing AR at 82).  As a result, the

14   Commissioner argues that the VE provided sufficient support for his conclusion that plaintiff

15   could perform this occupation.  *See id*.

16        The DOT raises a rebuttable presumption as to job classification.  *Johnson v. Shalala,*

17   60 F.3d 1428, 1435–36 (9th Cir. 1995).  As discussed above, SSR 00–4p provides that an ALJ

18   has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with

19   the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict

20   is reasonable.  *Massachi,* 486 F.3d at 1152–54.  As stated by the Ninth Circuit Court of

21   Appeals: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar

22   as the record contains persuasive evidence to support the deviation."  *Johnson,* 60 F.3d at

23   1435–36.  *See also Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold

24   that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a

REPORT AND RECOMMENDATION - 18

claimant's noted limitations, the ALJ must definitively explain this deviation."). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Social Sec. Admin.,* 119 F.3d 789, 794 (9th Cir. 1997) (internal citations omitted).

As the Commissioner points out, the ALJ did ask the VE during the administrative hearing whether "[t]his cleaner/housekeeper job that you described, does it also . . . cover[] that category of work that she's doing now on a part time basis" and include " the category of work that we normally see being performed when we're on our travel experiences in hotel/motels?" AR at 81. Moreover, the ALJ elicited testimony from the VE establishing that this job, when performed in a hotel or motel, would involve a "fairly quiet room setting unless they turn the TV up loud." AR at 82. Nevertheless, the ALJ erred by failing to acknowledge the conflict between the DOT, which provides that the job involved moderate noise, and the VE's testimony that the job of housekeeper/cleaner was quiet. Moreover, the ALJ failed to explain how he resolved this conflict in his written decision as required by SSR 00–4p. *See* SSR 00–4p ("The adjudicator will explain in the determination or decision how he or she resolved the conflict [between the VE's testimony and the DOT]."). This was reversible error. *See Pinto*, 249 F.3d at 846 (remand warranted where the ALJ found claimant not disabled based "largely" on vocational expert's testimony that conflicted with the DOT, neither the ALJ nor the VE addressed the deviation, and the ALJ otherwise "made very few findings").

### 2.   *Stubber*

Plaintiff argues that the ALJ also erred by citing to the job of stubber, which involves removing and sorting sales slip stubs from packages at a loading dock and keeping a record of store deliveries. First, plaintiff points out that the ALJ indicated that plaintiff could only

perform a job where it was not necessary to communicate frequently with coworkers or supervisors. Dkt. 14 at 22 (citing AR at 32). However, when the ALJ asked the VE whether the job of stubber required frequent communication with coworkers or supervisors, the VE responded that he did not know. *Id*. (citing AR at 84). Second, the plaintiff points out that the ALJ's actual RFC assessment limits plaintiff to two to three step instructions. Dkt. 14 at 23 (citing AR at 32). However, in the narrative portion of the ALJ's decision, the ALJ mistakenly provided that plaintiff was limited to one to two step tasks in at least two places. *Id.* (citing AR at 34-35). Plaintiff asserts that "whether plaintiff can perform two or three step tasks is material to a determination of whether she can perform work as a stubber because this occupation has a GED reasoning level of two." *Id*.[5] Because only jobs with a GED level of one can be performed by an individual limited to one or two step instructions, plaintiff can only work as a stubber if she can perform three step tasks. *See id*. at 24. In light of the errors surrounding the ALJ's analysis of the stubber job, plaintiff requests remand for further consideration of the ALJ's findings at step five. *See id.*

With respect to plaintiff's first argument, the Commissioner asserts that the plaintiff mischaracterizes the VE's testimony, because the VE ultimately testified that "there's no requirement of interacting with coworkers in order to actually accomplish the task of the job." Dkt. 15 at 14 (citing 85). The VE also described the job as involving "attending to the work

---

[5] Each DOT listing includes a level of reasoning development. *See* DOT, Appendix C (4th ed.1991), *available at* http://www .oalj.dol.gov/libdot.htm. Reasoning development is one aspect of the "General Educational Development (GED) Scale" used in assessing DOT job listings, as the GED also addresses levels of mathematical and language development. *Id.* Level one reasoning development is defined as the ability to: "Apply commonsense understanding to carry out simple one- or two step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Level two reasoning development is defined as the ability to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

REPORT AND RECOMMENDATION - 20

assignment instructions and orders of a supervisor," which the Commissioner argues indicates that frequent communication was not required.  Dkt. 15 at 14.

The Commissioner contends that plaintiff's second argument "relies on harmless typographic errors.  The ALJ found Plaintiff limited to simple, two-to three-step instructions.  The vocational hypothetical question presented to the vocational expert described an individual who 'can understand, remember and carry out simple two to three step instructions.'"  Dkt. 15 at 14.  Thus, the Commissioner contends that these errors in the ALJ's written decision were harmless.  *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

During the hearing, the VE explained that "the DOT doesn't define the environmental situations in which the [stubber position is performed], other than to note that it's performed at a loading dock.  It doesn't give us the benefit of understanding how the packages arrive at the loading dock for the stubs to be removed . . . There may or may not be frequent communication."  AR at 84.  The VE then went on to explain that "the level of communication is defined as taking instructions and helping . . . That is code number eight, which is at the bottom level of the hierarchy."  AR at 84-85.  The VE asserted that "the long definition of taking instructions and helping is attending to the work assignment instructions and orders of supervisor.  So there's no requirement of interacting with coworkers in order to actually accomplish the task of the job.  The job itself is simply to remove the stub and place it somewhere.  The instructions for which packages to remove the stubs from come from the supervisor, and then the work is performed independently."  AR at 85.

The ALJ's errors in analyzing the stubber job are not harmless.  As alleged by the plaintiff, the ALJ mistakenly described plaintiff as being limited to one to two-step instructions and tasks in at least two prominent places in his written decision, which would be

1   inconsistent with the job of stubber.  AR at 34-35.  Moreover, the VE's testimony concerning

2   the frequency of communication actually involved in performing the job of stubber was

3   muddled at best.  Although frequent interaction with coworkers is not a listed job requirement,

4   the VE's testimony suggests that frequent communication with a supervisor may be required.

5   As mentioned above, the VE stated that "taking instructions and helping is attending to the

6   work assignment instructions and orders of [a] supervisor . . . the instructions for which

7   packages to remove the stubs from come from the supervisor, and then the work is performed

8   independently."  AR at 85.  Although the ALJ's RFC assessment provided in one place that

9   plaintiff could "respond appropriately to a supervisor," it also limited plaintiff to jobs "where

10  it is not necessary to communicate frequently with coworkers *or supervisors*."  AR at 32

11  (emphasis added).  It is unclear whether the job of stubber is consistent with these limitations.[6]

12          Without more, the ALJ's finding at step five that plaintiff could perform the jobs of

13  housekeeper/cleaner and stubber is not supported by substantial evidence.  Accordingly, this

14  case must be remanded for a reevaluation of what jobs, if any, plaintiff can perform.  On

15  remand, the ALJ shall solicit the testimony of a VE, and discuss the DOT reasoning levels,

16  noise levels, and frequency of communication required to perform any jobs identified.  If there

17  is any conflict between the VE's testimony and the DOT, the ALJ shall discuss this conflict

18  and the ALJ's resolution of it in the written decision.

19  //

20  //

21  //

22

23

24          [6] The DOT does describe the job of stubber as having a noise level of 2, which is
    "quiet."  DOT 222.687-034, 1991 WL 672136.

REPORT AND RECOMMENDATION - 22

1

## VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be REVERSED and

3   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4   instructions.  A proposed order accompanies this Report and Recommendation.

5          DATED this 20th day of July, 2012.

6

7          _____

8          JAMES P. DONOHUE
           United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24